UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MOSES RODRIGUEZ,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　Case No:  8:15-cv-30-T-24AEP

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

**A.     Procedural Background**

Plaintiff filed an application for DIB (Tr. 114-20).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 50-76, 81-86).  Plaintiff then requested an administrative hearing (Tr. 87-88).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 26-49).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 11-25).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-10).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1992, claimed disability beginning September 21, 2010 (Tr. 114). Plaintiff did not complete high school (Tr. 137). Plaintiff has no past relevant work experience (Tr. 20). Plaintiff alleged disability due to nephrotic syndrome (Tr. 136).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2012, and had not engaged in substantial gainful activity during the period from the alleged onset date of September 21, 2010, through the date last insured of December 31, 2012 (Tr. 16). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: nephrotic syndrome, edema, and hypertension (Tr. 16). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform the full range of light work, except that Plaintiff had to avoid concentrated exposure to extreme heat (Tr. 17). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible (Tr. 17-19).

The ALJ then determined that Plaintiff did not have any past relevant work (Tr. 20). Given Plaintiff's background and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy under the framework of Medical-Vocational Rule 202.17 (Tr. 20-21). Accordingly, based on Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff not disabled (Tr. 21).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

The ALJ, in part, decides Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is

severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." 20 C.F.R. at § 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. 20 C.F.R. § 404.1569a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates

reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

### III.

Plaintiff argues here that the ALJ erred by (1) improperly concluding that Plaintiff's condition was stable and improving and therefore failing to include all of Plaintiff's limitations in the RFC, (2) failing to properly consider the opinion of Dr. Guillermo Suarez, and (3) improperly concluding that Plaintiff was not disabled under Medical-Vocational Rule 202.17. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

#### A. RFC

Plaintiff argues that the ALJ erred by improperly concluding that Plaintiff's condition was stable and improving, and, as a result, the ALJ failed to include limitations in the RFC assessment to address the need to elevate the legs to reduce edema and the need to reduce standing and walking. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see also Jamison v.*

*Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

As an initial matter, and as the Commissioner contends, Plaintiff premises his argument regarding the lack of improvement in his condition almost entirely upon evidence dated after the date last insured. A claimant asserting a claim for DIB must demonstrate disability on or before the last date for which the claimant is insured. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing 42 U.S.C. § 423(a)(1)(A)). Here, Plaintiff's date last insured was December 31, 2012, so his reliance upon evidence in the record after that date is misplaced. *See Majkut v. Comm'r of Soc. Sec.*, 394 Fed. App'x 660, 664 (11th Cir. 2010) (finding that treatment notes regarding treatment after the date last insured could not support the claimant's DIB claims).

Notwithstanding, the evidence of record prior to the date last insured supports the ALJ's statement that Plaintiff's condition was stable and improving and that limitations regarding the elevation of Plaintiff's legs and the reduction of standing and walking were unwarranted. Indeed, the record indicates that, though Plaintiff experienced a recent flare up of his nephrotic syndrome, Plaintiff's extremities were free of edema and he exhibited a full range of motion in his joints upon examination in November 2010 (Tr. 204-05). Following that, in February 2011, Plaintiff's edema was under control to the point that he no longer required any diuretic therapy, and he exhibited full range of motion of his joints and no edema upon examination (Tr. 202-03).

In March 2012, Dr. Suarez noted that Plaintiff exhibited no abnormalities or deformities in either his upper or lower extremities, demonstrated negative straight-leg-raise tests, showed normal peripheral circulation, and appeared in no distress (Tr. 212-13). In addition, Plaintiff's response to painful stimuli, sensory perception, and motor response were all normal (Tr. 213).

Plaintiff had a normal gait, no limp, and erect posture and demonstrated an ability to walk on his heels and toes, to squat, and to walk without the need for an assistive device (Tr. 214). Furthermore, Plaintiff exhibited normal reflexes and strength in his upper and lower extremities and no abnormalities regarding sensation in his upper or lower extremities (Tr. 214). After examining Plaintiff, Dr. Suarez concluded that Plaintiff should be able to carry out most job duties even though Plaintiff may need periodic hospitalizations for symptoms from his kidney disorder (Tr. 215).

Given the foregoing, the ALJ properly concluded that Plaintiff's condition was stable and improving prior to the date last insured and that Plaintiff did not require limitations for elevation of his legs or for a reduction in standing and walking (Tr. 17-19). Additionally, the ALJ's observation that Plaintiff had not been hospitalized for his nephrotic syndrome since October 2010 lends further support for the ALJ's conclusion. Plaintiff fails to identify any evidence prior to the date last insured that undermines the ALJ's conclusion in that regard. Instead, substantial evidence supports the ALJ's RFC assessment.

### B. Medical Opinion

Plaintiff next contends that the ALJ erred by improperly asserting that Dr. Suarez opined that Plaintiff could perform light work and also by failing to provide adequate reasons for not crediting Dr. Suarez's opinions. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1527. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an

7

opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. § 404.1527(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. § 404.1527(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. § 404.1527(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

Plaintiff correctly contends that the ALJ mistakenly stated that Dr. Suarez opined that Plaintiff could perform light work (Tr. 19). As the Commissioner argues, however, such error is harmless. Indeed, as discussed above, Dr. Suarez examined Plaintiff in March 2012, wherein Dr. Suarez noted all normal findings as to all systems and concluded that Plaintiff maintained the ability to perform most job duties (Tr. 212-18). Following the examination, Dr. Suarez concluded that Plaintiff would need to continue treatment with a nephrologist, would need a gastrointestinal consult for continued abdominal pain, and might need periodic hospitalization for worsening symptoms related to his kidney disorder (Tr. 215). Plaintiff makes much of Dr. Suarez's recommendations, but such recommendations do not conflict with the ALJ's conclusion that Plaintiff maintained the ability to perform light work, especially given Dr.

Suarez's findings upon examination as well as the other evidence of record. For instance, Dr. Suarez speculated that Plaintiff would need periodic hospitalization for his symptoms yet noted that Plaintiff had not been hospitalized since 2010 for symptoms related to the nephrotic system (Tr. 212, 215). The record further indicates that Plaintiff was not hospitalized for the symptoms associated with his nephrotic syndrome at any time between Dr. Suarez's examination and the date last insured.

Accordingly, though Plaintiff correctly asserts that the ALJ misstated Dr. Suarez's opinion, Dr. Suarez's actual opinion does not conflict with the ALJ's conclusion that Plaintiff maintained the ability to perform light work. Furthermore, as the ALJ discussed, the objective medical evidence and other medical opinions were consistent with Dr. Suarez's opinion, and all supported the ALJ's conclusion. As such, Plaintiff failed to show how the ALJ's misstatement prejudiced him in any way. *See Cooper v. Astrue*, 373 Fed. App'x 961, 962 (11th Cir. 2010) (*per curiam*) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (stating that an error is harmless when it does not prejudice a claimant)). Moreover, as the Commissioner notes, "[i]n a Social Security case, erroneous factual statements by the ALJ may constitute harmless error if the ALJ applies the proper legal standard." *Majkut*, 394 Fed. App'x at 665. Here, the ALJ simply set forth an erroneous factual statement but applied the proper legal standards in considering Dr. Suarez's opinion in conjunction with the rest of the evidence of record. The ALJ thus did not err in his consideration of Dr. Suarez's opinion.

### C. Vocational Expert

Finally, Plaintiff contends that the ALJ erred by failing to obtain testimony from a vocational expert ("VE"). Specifically, Plaintiff argues that, given the ALJ's finding that Plaintiff's edema constituted a severe impairment and given Plaintiff's purported need to elevate his legs to address the edema, the ALJ should have utilized the testimony of a VE during

9

the administrative hearing.  At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work.  *Phillips*, 357 F.3d at 1239; 20 C.F.R. §§ 404.1520(a)(4)(v).  If the claimant can make an adjustment to other work, a finding of not disabled is warranted.  *Phillips*, 357 F.3d at 1239.  Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted.  *Id.*  At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in the national economy which, given the claimant's impairments, the claimant can perform.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citation omitted); *see Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."  *Wilson*, 284 F.3d at 1227 (citation omitted).  There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines ("Grids") and by the use of a VE.  *Phillips*, 357 F.3d at 1239-40.  Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE.  *Jones*, 190 F.3d at 1229.  Indeed, exclusive reliance on the Grids is not appropriate under either of those circumstances.  *Phillips*, 357 F.3d at 1242.

When both exertional and non-exertional impairments exist, the Grids may still be applicable, however.  *Sryock*, 764 F.2d at 836.  Where the ALJ considers the non-exertional limitations, the ALJ need only determine whether the non-exertional limitations significantly limit the claimant's basic work skills, meaning that the claimant has limitations that prohibit him or her from performing "a *wide* range" of work at a given level.  *Phillips*, 357 F.3d at 1243

(emphasis in original); *Sryock*, 764 F.2d at 836 ("'[N]on-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level'" (citations omitted)). If the ALJ determines that a claimant's non-exertional limitations do not significantly limit his or her basic work skills at a specific work level, the ALJ may rely on the Grids in determining whether the claimant is disabled. *Phillips*, 357 F.3d at 1243. If, however, the ALJ determines that a claimant's non-exertional limitations significantly limit the claimant's basic work skills at a given work level, the ALJ must consult a VE. *Id.* Applying the Grids to a claimant who has non-exertional impairments requires the ALJ to make a "specific finding" as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level. *Foote*, 67 F.3d at 1559; *see also Sryock*, 764 F.2d at 836. Courts review the ALJ's determination regarding the severity of the non-exertional impairments only to determine whether it is supported by substantial evidence. *Sryock*, 764 F.2d at 836.

In this instance, the ALJ determined that Plaintiff was not disabled based upon Medical-Vocational Rule 202.17 (Tr. 21). Plaintiff essentially contends that, because the ALJ failed to properly incorporate limitations into the RFC regarding standing and walking and Plaintiff's need to elevate his legs, the ALJ improperly relied upon the Grids. As discussed in greater detail above, the ALJ appropriately excluded limitations regarding standing and walking and Plaintiff's purported need to elevate his legs due to edema. The record indicates that, during the applicable period, Plaintiff's edema was under control and caused no functional limitations. As such, the ALJ did not need to account for such limitations related to Plaintiff's edema in considering whether Plaintiff could perform other work.

Beyond that, the ALJ properly concluded that Plaintiff's non-exertional limitation of no concentrated exposure to extreme heat did not preclude consideration of Plaintiff's capabilities

11

under the Grids (*see* Tr. 21).  In fact, Plaintiff does not contend that such non-exertional limitation was severe enough to preclude or limit a wide range of employment at the light work level.  Since Plaintiff's non-exertional limitation did not erode the occupational base, the ALJ properly relied on Vocational Rule 202.17 in concluding Plaintiff was not disabled.

## IV.

Accordingly, after due consideration and for the foregoing reasons, it is hereby

RECOMMENDED:

   1.  The decision of the Commissioner be affirmed.

   2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 9th day of February, 2016.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


cc: Hon. Susan C. Bucklew
 Counsel of Record